COLEMAN v. STATE HIGHWAY COMMISSIONER.

MANDAMUS—OFFICERS—CIVIL SERVICE COMMISSION ORDERS—EVI-
DENCE—REMAND.

In mandamus proceeding to compel a State officer to reinstate
an employee in the classified service of the State pursuant to
an order of the civil service commission, if the order of the
commission is supported by the record the Supreme Court
does not weigh the testimony but where the record does not
contain the testimony taken before the commission the cause
is remanded for returning such testimony or holding a hearing
*de novo* in case of inability to substantiate its former order
by such testimony.

Petition by Andrew S. Coleman for writ of man-
damus compelling Charles M. Ziegler, State High-
way Commissioner, to reinstate him in State Ferry
Service as ordered by Civil Service Commission.
Submitted January 16, 1945. (Calendar No.
42,823.) Writ granted February 20, 1945. Submit-
ted on rehearing June 15, 1945. Remanded on re-
hearing June 29, 1945.

*Archibald D. Jones,* for plaintiff.

*Benjamin F. Watson,* for defendant.

BUSHNELL, J. On June 30, 1944, we issued an
order requiring defendant Charles M. Ziegler, State
highway commissioner, to show cause why a writ of
mandamus should not issue requiring him to re-
employ plaintiff, Andrew S. Coleman, and to rein-

state him in the State ferry service and place his name on the payroll of the State highway department as of October 19, 1943, as ordered by the civil service commission. On July 1, 1944, we issued a writ of certiorari to the civil service commission in the same cause. Its return to that writ is included in the instant record.

For some time Captain Coleman had been in the employ of the State ferry service of the Michigan State highway department, and on May 25, 1943, held the status of Vessel Officer 4A under State civil service classifications. In April of that year a charter was executed between the State highway department as owner of the State ferries, "City of Petoskey" and "City of Munising" and the Truckers Steamship Company of Detroit, whereby these two State ferries were leased to the steamship company for the navigation season of 1943. The propriety of such a lease is not presently involved. In the charter the right was reserved by the State, as lessor, to approve the employment of the master and the chief engineer of each of the vessels during the charter period. Defendant's port captain at the Straits of Mackinac designated Captain Coleman as master of the "City of Petoskey," and he was specifically charged "to look after and protect the interest of the State" during the period while the vessel was under charter. Such an arrangement required Captain Coleman to have a leave of absence from State service, which leave was approved by the civil service commission and entered on its records. This arrangement, however, did not sever the captain's relationship with the highway department, nor his status as a State employee.

On or about July 10, 1943, according to the return filed by defendant, the captain submitted his "resignation" to the lessees as master of the "City

of Petoskey," and "abandoned" the vessel at Detroit without notifying the department. Some days later he presented himself at the Straits of Mackinac and demanded reinstatement to his position as master in the State employ. He was informed that he would not be reinstated for reasons assigned by the department as follows: That because of his "abandonment" of the vessel at Detroit he had indicated his incompetence to remain an employee of the department; that the ferry service at the Straits had been so curtailed during the season that his services were not required; and that he did not possess seniority in the civil service commission classification to permit him to replace any of the masters then in charge of ferries operating at the Straits; that had he continued in the employ of the department his lack of seniority, together with the curtailment of ferry service, would have required his lay-off, and that specifically—"no right attaches to an employee in a particular State civil service classification to say where or how, or under what circumstances, he will work, providing that the assignment made any such employee falls within the classification, and pay therefore is made accordingly; that this defendant, State highway commissioner, was acting within the scope of his authority in assigning said Andrew Coleman as master of the 'City of Petoskey,' to the payroll of Truckers Steamship Company during the period of the charter and the said employee, Andrew Coleman, reserved no right to himself to decide whether he would work on Lake Erie or at the Straits of Mackinac, and particularly since the monthly pay of said Andrew Coleman was not decreased by said assignment, but on the contrary was substantially increased."

The captain demanded a hearing and the hearing board found as follows:

"This case raises an unusual situation and one which will probably not arise again. It involves the chartering of two State vessels to a corporation organized to operate them from Detroit to Cleveland in connection with deliveries of war materials. Petitioner was assigned as master to one of these vessels, the "Petoskey," and the charter provided that he was to be paid by the new corporation and a leave of absence granted by the State highway department in order to carry out this plan, all being in accordance with the arrangements made by the State highway department, and petitioner's orders being received from the State highway department.

"The testimony indicated that in the operation of the vessel conflicting orders and authority created such difficulty for the petitioner that in the early part of July, 1943, he notified the officials in charge of the operating company that he would not continue, but gave them notice that he would leave on the succeeding Saturday, that notice being given on Tuesday, but would continue longer rather than leave them without a master. He was advised that they would have a master by Saturday and he was relieved from duty on that date. He immediately went north to St. Ignace and reported Monday morning to his superior, advising him of the entire situation. Petitioner then asked to be assigned to a boat and placed on the State payroll.

"A decision in this case involves a careful consideration and analysis of the seniority rights and records of all parties involved in the same class of position as the petitioner. The hearing board has made such examination and finds that of the four masters which are involved in such investigation, seniority both as to length of State service and service in the position of the class shows that Louis Straham ranks 1 under length of State service and service in the position. He entered State service April 1, 1934, and his seniority record in the class dates from June 1, 1938. Benjamin E. Houle en-

tered State service April 1, 1937, and his seniority record in the class dates from November 5, 1938. (Both of these are eliminated from consideration because Louis F. Straham is operating a State highway ferry at the present time and Benjamin E. Houle is operating one of the State ferries under charter). This leaves for consideration petitioner Andrew S. Coleman, and James L. Blaine.

"An analysis of the length of service of petitioner shows State service of five years and two months and service in the class of four years and four months. The record of James L. Blaine shows State service of five years and nine months and service in the class of two years and eleven months.

"The hearing board construes the rule relative to reinstatement to require that seniority in the class shall be the governing feature, but in arriving at same, the service ratings of the person involved should also be a factor. This has been done and the hearing board finds that both Coleman and Blaine are ranked numerically "good." In view of this analysis and the construction of the rule as heretofore stated, the hearing board finds that Andrew S. Coleman has seniority over James Blaine and should be reinstated to the position now occupied by Blaine as Vessel Officer 4A and reassigned to active service and his name placed on the State payroll."

Upon issues thus framed, defendant takes the position that there is no record before this court upon which any decision can be based other than one adverse to plaintiff, and that the order of the commission is not sustained by the evidence. Defendant also asserts that the commission erroneously construed its own rules and regulations, and that a writ of mandamus does not lie.

Plaintiff takes the position that the facts determined by the commission, acting within the scope

of its authority, are conclusive and that the writ should issue.

The facts in the instant case are not disputed and the issue is simple. Plaintiff properly refused to permit or acquiesce in the misuse of State property, *i.e.*, the improper operation of the "City of Petoskey." It is unfortunate that the record does not contain any of the testimony taken before the commission, which would have been of material aid to the Court.

Captain Coleman's acts were reviewed by the hearing board of the civil service commission on October 14, 1943, and on December 7th all of the parties were heard by the entire commission, after an appeal had been granted at the request of the State highway department. The commission unanimously confirmed the findings and action of its hearing board and ordered Captain Coleman to be placed on the payroll as of October 18, 1943. On January 26, 1944, the highway department's petition for rehearing was denied and the commission reaffirmed its decision of December 7th. The highway department thereafter sought a reconsideration of its petition for rehearing, and this was denied by the entire commission on February 11, 1944, and its decision reaffirmed.

The civil service commission is a constitutional body, charged with duties specified in the amendment as follows:

"The commission shall classify all positions in the State civil service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive performance exclusively on the basis of merit, efficiency and fitness the qualifi-

cations of all candidates for positions in the State civil service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the State civil service. No person shall be appointed to or promoted in the State civil service who has not been certified as so qualified for such appointment or promotion by the commission. No removals from or demotions in the State civil service shall be made for partisan, racial, or religious considerations." (Constitution of 1908, art. 6, § 22, effective January 1, 1941).

The order of the civil service commission in the instant case is supported by the record, and in such instances we should not and do not weigh the testimony. The commission has not erroneously construed its own rules. Mandamus may issue, if necessary, to require defendant State highway commissioner to obey the order. The writ is granted, but without costs.

STARR, C. J., and BUTZEL, SHARPE, and REID, JJ., concurred with BUSHNELL, J. NORTH, WIEST, and BOYLES, JJ., concurred in the result.

## ON REHEARING

BUSHNELL, J. In the original opinion filed in this matter on February 20, 1945, the Court directed the issuance of a writ of mandamus requiring defendant State highway commissioner to re-employ plaintiff Andrew S. Coleman, and to reinstate him in the State ferry service and place his name on the payroll of the State highway department as of October 19, 1943, as ordered by the State civil service commission.

In that opinion a majority of the Court subscribed to the statement that:

"The facts in the instant case are not disputed and the issue is simple. Plaintiff properly refused to permit or acquiesce in the misuse of State property, *i.e.*, the improper operation of the 'City of Petoskey'. It is unfortunate that the record does not contain any of the testimony taken before the commission, which would have been of material aid to the Court."

The opinion further states:

"The order of the civil service commission in the instant case is supported by the record, and in such instances we should not and do not weigh the testimony. The commission has not erroneously construed its own rules."

Upon application of the defendant a rehearing was granted for the purpose of ascertaining whether the cause should be remanded to the civil service commission in order that a transcript of the testimony might be returned, and failing that, whether a new hearing should be ordered.

After considering the matter upon rehearing, the Court is of the opinion that such course should be pursued. The cause is remanded to the State civil service commission for the purpose of returning to this Court, in detail, the testimony upon which the commission based its order; and in the event such testimony cannot be furnished, the commission is then directed to set aside its former order, consider the matter *de novo*, and preserve the testimony so that the order then entered may be reviewed at the instance of either party, upon proper application to and order from this Court.

Starr, C. J., and North, Wiest, Butzel, Sharpe, Boyles, and Reid, JJ., concurred.